IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NET CONNECTION HAYWARD, LLC,

    Plaintiff,

  v.

CITY OF HAYWARD,

    Defendant.

Case No. C 13-1212 SC

ORDER RE: SUPPLEMENTAL BRIEFING AND REPORT

On March 26, 2013, the Court granted Plaintiff Net Connection Hayward, LLC's ("Plaintiff") motion for a temporary restraining order against the City of Hayward ("Defendant").  The parties agreed to extend the terms of the temporary restraining order until the Court's ruling on the preliminary injunction.  ECF No. 21 ("Stipulation").  On April 30 and May 1, 2013, the Court held an evidentiary hearing regarding the preliminary injunction, at which the Court heard testimony from both parties.

At that hearing, the Court told the parties that it would defer ruling on the preliminary injunction until the parties have submitted their briefs on that issue.  Those briefs are to answer the following questions as components of the usual preliminary

injunction analysis.  Plaintiff is also ordered to submit a supplemental report, detailed in a separate section below.  Out of fairness to Defendant, and since the contents of this report will be relevant to the questions the Court poses below, Plaintiff should submit this report alongside its opening brief.

### A.   Plaintiff's Supplemental Report

Having read and considered the analytical report from Nick Farley & Associates, Pl.'s Ex. 4 (the "Analysis"), as well as all other relevant testimony and evidence, the Court finds that some aspects of the sweepstakes software's operation are still unclear. Plaintiff shall submit a report explaining the following issues. There is no length limitation on this report, but Plaintiff should take care to ensure that the report is accurate, understandable, and not needlessly intricate.

The Analysis explains that the sweepstakes software "utilizes finite pools containing sweepstakes game pieces with assigned prize values," and that each pool is placed in one of four "predetermined 'shuffles'" before being made available for play.  Analysis at 3. Further, the Analysis indicates that "[t]here is a separate pool for each game style and associated play levels."  Id. at 3-4. Further, there are four different "game styles" -- twenty-five line games, scatter games, twenty-line games, and sixteen-line games -- and thirty-two finite pools.  Id. at 4, 5-6, 7-8.

Plaintiff's report should provide discrete definitions of "pool" and "play level," as well as a description of the "shuffling" process.  The latter description should include the type of algorithm the shuffling process employs.  Moreover, given the Analysis's plain statement that "shuffles are utilized in a

2

round robin fashion," Analysis at 8, Plaintiff's report should describe this "round robin" process as it is used in the sweepstakes software.

In this context, Plaintiff must explain what process governs the selection of a pool for a given play level when a user plays one of the games. In detail, the report should provide a walkthrough of what the pool selection, shuffling, and result selection process looks like from the software perspective whenever a user plays a particular game. For example, if a user plays a sixteen-line game, progressively engaging the game at a different play level, Plaintiff's report should explain how the software is calculating what result will ultimately be shown to the user.

For games that include a "Progressive Jackpot," see Analysis at 6, Plaintiff's report should explain how the Progressive Jackpot is calculated, selected, and paid.

Plaintiff's report should explain how results selection occurs when several players are playing the same or multiple games at the same time. For example, Plaintiff's report should describe what happens if two or more users are simultaneously playing the same game at the same play level and (presumably) drawing from the same pool.

Based on the above issues, Plaintiff's report should also include any additional information that Plaintiff thinks is relevant to clarifying the Court's understanding of the sweepstakes software's operation.

**B. Questions**

The parties' briefs must answer the following questions in detail, supported by case law and evidence from the record.

3

Based on California case law interpreting the gaming statutes at issue in this case, including <u>Trinkle v. California State Lottery</u>, 105 Cal. App. 4th 1401 (Cal. Ct. App. 2003), <u>People ex rel. Lockyer v. Pacific Gaming Technologies</u>, 82 Cal. App. 4th 699 (Cal. Ct. App. 2000), and <u>Trinkle v. Stroh</u>, 60 Cal. App. 4th 771 (Cal. Ct. App. 1997), how should the operation of Plaintiff's sweepstakes software be characterized?  Is it predominately a game of chance, or a game of skill?

How do the "pools" and "play levels" described in the parties' witnesses' testimony and the Report affect a sweepstakes entrant's "chance" to win?  Do the multiple "shuffles," pools, and different game styles and play levels introduce an "element of hazard or chance or other outcome of operation unpredictable by [the user or sweepstakes entrant" -- even if the "finite pools" are arranged in advance and include predictable odds?  <u>See</u> Cal. Pen. Code § 330b(d).  Given the lottery and slot machine statutes' language, Cal. Pen. Code §§ 319, 330a, 330b, is the aspect of "chance" in a gaming device relative to the user's subjective experience of the game, or is it, as suggested in <u>Trinkle v. California State Lottery</u>, something to be analyzed according to the machine's operation in itself?  105 Cal. App. 4th at 1411.  (Keep in mind that the statutory language as quoted in that case has apparently changed slightly since 2003.)

Supposing that the sweepstakes software that Plaintiff uses is not illegal under California law (no matter how close to the line it gets), is Defendant's retroactive emergency ordinance lawful?  On the other hand, even if Plaintiff's sweepstakes software is not legal, was Defendant's enactment and renewal of its emergency

4

ordinance nevertheless unlawful or impermissible under the Constitution or the City of Hayward's zoning laws and regulations?

### C. Logistics

Within ten (10) days of this Order's signature date, Plaintiff must submit the report, as described above, simultaneously with its opening brief.  This brief must be no longer than twenty-five (25) pages.  Defendant will then have ten (10) days from the filing date of Plaintiff's brief to submit its opposition brief, also limited to twenty-five (25) pages.  After that, Plaintiff will have five (5) days to submit a reply brief, limited to fifteen (15) pages.

IT IS SO ORDERED.

Dated: May 2, 2013

UNITED STATES DISTRICT JUDGE