United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NET CONNECTION HAYWARD, LLC, | ) Case No. C 13-1212 SC |
| Plaintiff, | ) ORDER DENYING PRELIMINARY<br>) INJUNCTION |
| v. | ) |
| CITY OF HAYWARD, | ) |
| Defendant. | ) |

I.  **INTRODUCTION**

This is a case about the police powers of a city versus the
constitutional rights of a business.  Now before the Court is
Plaintiff Net Connection Hayward, LLC's ("Plaintiff") motion for a
preliminary injunction against Defendant City of Hayward
("Defendant" or the "City").  The Court held evidentiary hearings
on this matter on April 30 and May 1, 2013, and the parties
completed their supplementary briefing on the issue on May 30,
after which the Court deemed the matter submitted.[1]  Having

---

[1] The parties agreed that their supplemental briefs on the
preliminary injunction matter, ECF Nos. 35 ("Br. ISO PI"), 39
("Opp'n to PI"), 43 ("Reply ISO PI"), submitted per the Court's
post-hearing Order, ECF No. 30, are meant to supplement but not

**United States District Court**
For the Northern District of California

1  considered the evidence presented in the hearings, as well as the
2  parties' papers and arguments, the Court DENIES Plaintiff's motion
3  for a preliminary injunction.

4

5  **II.  <u>BACKGROUND</u>**

6      Plaintiff is a business called Net Connection in downtown
7  Hayward, California.  Tr. at 2.[2]  (The Court refers to Plaintiff's
8  physical location as "Net Connection Hayward").  Plaintiff's owner
9  is Mr. Ron Doyle.  <u>Id.</u>  Defendant is the City of Hayward.

10     Plaintiff sells and rents computer time, including Internet
11 access and access to software like word processors and spreadsheet
12 programs; provides other services like faxing, scanning, and
13 copying; and sells snacks and drinks.  <u>Id.</u> at 12.  Plaintiff has
14 four other businesses located around California that are
15 essentially the same as Net Connection Hayward, but that particular
16 location is the one at issue in this case.  <u>Id.</u> at 11-12.

17     As a promotional strategy, Plaintiff operates a sweepstakes
18 (the "Sweepstakes Promotion") at Net Connection Hayward.  <u>Id.</u> at
19 12.  The Sweepstakes Promotion runs on software that Plaintiff
20 obtained from Capital Sweepstakes, which apparently designs and
21 licenses similar software to other businesses in California.  <u>See</u>
22 <u>id.</u> at 11-12, 43.  Essentially, the Sweepstakes Promotion allows
23 customers who purchase computer time (or who opt into the
24 Sweepstakes Promotion for free, with no purchase necessary) to play

25 ────────────────
26 supersede their briefs on the earlier-entered temporary restraining
   order, ECF Nos. 3 ("Mot. for TRO"), 9 ("Opp'n to TRO").
27
   [2] The transcript cited here is from the Court's hearing on
28 Plaintiff's motion for a preliminary injunction, ECF Nos. 32-33,
   but the Court uses the shorter citation "Tr." for brevity's sake.

a series of games on Plaintiff's computers, with the possibility of winning cash prizes. See, e.g. id. at 45-47, 50-55. Plaintiff's customers spend a great deal of time playing the Sweepstakes Promotion games: witnesses approximated that about fifty percent of customers play the games as opposed to using the computers for other activities. Id. at 54, 253.

Though the inner workings of the Sweepstakes Promotion are not important at this point, the Court will briefly summarize a very complicated technological setup as described in the report and analysis on the Sweepstakes Promotion software from Nick Farley & Associates, Inc., ECF No. 36-1 ("Suppl. Farley Report"). There are several different game types that a customer can play on Plaintiff's computers by using "points" that the customer acquires by buying computer time or just by asking for free points. Id. at 1-2. The game types are designed to look different, but the underlying mechanism for all of the types is the same: the player essentially flips over a virtual card to see if she wins or loses, though the "stacks" of "cards" with which the customer interacts are all pre-shuffled by a computer and then sorted among the different game types and levels among each game. Id. at 1-6. For example, a customer can choose to play "Fat Cat" or "Panda Paradise," each of which will draw from a different pool of pre-shuffled pieces and require the customer to use a different amount of Sweepstakes Promotion points. Id. at 1-6, 9. How many points a customer needs to flip over a card depends on what game type the customer is playing, and each different level of points draws from a different pool as well. Id. at 9. On a purely mathematical and computational level, the results of each Sweepstakes Promotion game

United States District Court
For the Northern District of California

1  are preset and predictable, since the Sweepstakes Promotion

2  software does not randomize results as a customer uses the

3  software, but the number of game types and the way "piles" of cards

4  are shuffled, selected, and rotated among the games provides for a

5  vast number of possible outcomes.  See id. at 6-10.

6       Before opening Net Connection Hayward, Mr. Doyle obtained a

7  lease on a building in downtown Hayward and contacted Defendant's

8  planning manager, Mr. Richard Patenaude.  Tr. at 13.  At that time,

9  Mr. Patenaude was the head of the City's planning division.  Id. at

10  220.  The City's zoning ordinance was exclusionary, meaning that

11  anything not specifically listed in the ordinance is prohibited,

12  and Mr. Patenaude's job when Mr. Doyle contacted him involved

13  (among other things) deciding whether particular uses could be

14  allowed under the City's ordinance.  See id. at 220-22; see also

15  ECF No. 3-10 ("Pl.'s RJN ISO TRO") Exs. G ("Zoning Ordinance

16  Sections 10-1.100 - 10-1.180") (providing basic zoning ordinance

17  guidelines), I ("Zoning Ordinance Sec. 10-1.2800 - 10.1-2850")

18  (describing zoning compliance processes).[3]

19       The area where Plaintiff's business is located is zoned

20  "Central City-Commercial."  Pl.'s RJN ISO TRO Ex. H ("Central City-

21  Commercial Ordinance").  The Central City-Commercial subdistrict

22  permits a list of primary and conditional uses, but Plaintiff's

23  business description is not included there.  See id.  It would

24  accordingly require some form of approval from the city --

25  Plaintiff's business would not be a permissive primary use.  See

26  Zoning Ordinance Sections 10-1.100 - 10-1.180; Zoning Ordinance

27  _____

28  [3] The Court takes judicial notice of documents submitted with the
parties' various requests for judicial notice under Federal Rule of
Evidence 201.

1  Sections 10-1.2800 - 10-1.2850; <u>see also</u> Pl.'s RJN ISO TRO Ex. K

2  ("Zoning Ordinance Sections 10-1.3105 - 10-1.3170").

3      When Mr. Doyle explained to Mr. Patenaude what Net Connection

4  Hayward planned to do, he said that the business would sell and

5  rent computer time, provide photocopying and scanning services, and

6  sell products like office supplies, snacks, and drinks.  <u>Id.</u> at 14.

7  He also mentioned that Net Connection Hayward would offer

8  promotions, which Mr. Patenaude asked him to explain further.  <u>Id.</u>

9  at 14-15.  Mr. Doyle accordingly sent Mr. Patenaude a letter on

10  November 11 or 12, 2012, in which he outlined Net Connection

11  Hayward's business and explained that Net Connection Hayward would

12  offer "special promotions" similar to those offered by major food

13  establishments and gas stations, so that customers could win cash

14  prizes through the use of purchased Internet time.  ECF No. 3-7

15  ("Doyle Decl. ISO TRO") Ex. B ("Patenaude Ltr.").

16      A few days after sending his letter, Mr. Doyle followed up

17  with Mr. Patenaude and learned that Mr. Patenaude still did not

18  understand the business or the Sweepstakes Promotion.  Tr. at 17.

19  Part of Mr. Patenaude's concern was that Mr. Doyle's description of

20  the Sweepstakes Promotion was not on the business license

21  application itself, though Mr. Patenaude agreed with Mr. Doyle that

22  the space for a description was too small to fit a very detailed

23  description -- all that fit was "Internet Service / Business

24  Center."  <u>See id.</u> at 67-68, 73, 229.  To clarify the Sweepstakes

25  Promotion and Plaintiff's business for Mr. Patenaude, Mr. Doyle

26  told Mr. Patenaude that in San Lorenzo, not far from Hayward,

27  Plaintiff operated an identical business to the one Plaintiff

28  planned to open in Hayward.  <u>Id.</u>  Mr. Doyle invited Mr. Patenaude

United States District Court
For the Northern District of California

to investigate the San Lorenzo business, since the services there were exactly what Plaintiff planned to provide at Net Connection Hayward.  Id.  Mr. Patenaude accepted the invitation and visited Plaintiff's San Lorenzo location,  so that he could corroborate his understanding of the written description of the business that Mr. Doyle provided with the actual business's operations.  Id. at 223.

While at Plaintiff's San Lorenzo location, Mr. Patenaude walked around the business, looked at the computers, spoke briefly to the cashier, and left.  Id. at 223-25, 229-30; see also Patenaude Ltr.  Mr. Patenaude did not operate any of the computers at Plaintiff's San Lorenzo location, nor did he play any of the Sweepstakes Promotion games, Tr. at 225, or read the large poster in Plaintiff's business that explained the Sweepstakes Promotion, Doyle Decl. ISO TRO Ex. A ("Sweepstakes Poster").  Plaintiff's manager, Ms. Keyawie Hernandez, also testified that the cashier on duty when Mr. Patenaude visited offered him some points to play the Sweepstakes Promotion games, and Mr. Patenaude's companion asked if he wanted to operate any of the computers, but Mr. Patenaude declined all offers.  Tr. at 84-88.  At that time, two other businesses similar to Plaintiff's were licensed and operating in the City, though Mr. Patenaude apparently did not visit those.  Id. at 232-33.

Not long after Mr. Patenaude visited Plaintiff's San Lorenzo location, he approved a business license for Plaintiff, which Plaintiff retrieved toward the end of November 2012.  Id. at 18-19, 232-33.  Mr. Patenaude stated both that he authorized Plaintiff's license from a land use perspective and that he would not have issued the license if he had any concerns with the legality of

**United States District Court**
For the Northern District of California

1  Plaintiff's proposed business.  Id. at 228-29, 232-35.  Though the

2  City's zoning ordinance was exclusionary and allowed non-permissive

3  uses only if the planning director (or the City Planning

4  Commission, on appeal) determines that the use is similar to and

5  not more objectionable than additional uses, the City also issues

6  two different types of use permits: administrative use permits,

7  which are approved by staff, and conditional uses, which require

8  conditional use permits from the City Planning Commission.  Id. at

9  264-65.  Mr. Patenaude did not clarify under which permit he

10  approved Plaintiff's license, but there is no dispute that he

11  approved it from a land use perspective, relative to the City's

12  zoning ordinance.  Id. at 228-29, 232-35.

13      Plaintiff began operating at Net Connection Hayward in

14  December 2012.  Id. at 11.  Around the same time, the California

15  Bureau of Gambling Control issued an advisory letter, which was not

16  intended to be legal advice, stating that it considers "Internet

17  cafes" that offer Internet time or phone cards in conjunction with

18  "promotional sweepstakes" to be illegal gambling operations subject

19  to California criminal laws.  Pl.'s RJN ISO TRO Ex. L ("Advisory

20  Letter") at 1-3.  Essentially, the Bureau of Gambling Control's

21  position is that sweepstakes like the one Plaintiff uses at its

22  businesses are games of chance that function as illegal slot

23  machines or lotteries.  Id. at 3.

24      In December, sometime around the Advisory Letter's

25  dissemination, Plaintiff received its first visit from the City

26  police.  See Tr. at 86-89.  On that visit, the police asked Mr.

27  Doyle and Ms. Hernandez for an explanation of the Sweepstakes

28  Promotion, which they provided, along with a demonstration.  Id. at

**United States District Court**
For the Northern District of California

87-88.  After that, the police did several "walkthroughs" at Net Connection Hayward, during which officers visited the business, checked on customers (talking to some outside the store), and asked more questions about the Sweepstakes Promotion.  Id. at 88-89.

Police visits to Net Connection Hayward continued -- including one random visit culminating in the arrest of one of Plaintiff's employees for an outstanding traffic warrant -- but the police were never at Net Connection Hayward to respond to calls of any sort. Id. at 27, 30, 32, 82, 84-88, 252, 298-99, 316.  Mr. Doyle and his employees also testified that Net Connection Hayward has never had problems with crime, drugs, prostitution, or any such issues.  See, e.g., at 30, 82, 252.  Defendant's law enforcement witnesses confirmed the same.  See, e.g., id. at 296, 316.  The only issues that Defendant actually reported came from a neighbor of Net Connection Hayward, who reported seeing some bikes parked in public places outside the business; having people park in her parking lot, which was not marked as private; and observing some people smoking near Plaintiff's business.  See id. at 280-81.

On February 8, 2013, Defendant sent Plaintiff a cease-and-desist letter indicating that Defendant had learned of Plaintiff's Sweepstakes Promotion and considered it illegal under California Penal Code sections 330a, 330b, 330.1, and 319 -- Defendant therefore ordered Plaintiff to cease and desist operation of the Sweepstakes Promotion at Net Connection Hayward.  Doyle Decl. ISO TRO Ex. E ("Feb. 8 Ltr.").  The February 8 Letter stated that if Plaintiff did not comply, Defendant would take any necessary legal action against Plaintiff, including public nuisance abatement, and that Defendant would assist with any other investigation or

**United States District Court**
For the Northern District of California

1  prosecution related to Plaintiff's Sweepstakes Promotion.  <u>Id.</u> at
2  1-2.

3      On February 19, 2013, the City's Director of Development
4  Services and the City Attorney recommended that the City Council
5  adopt an interim urgency ordinance that would impose a temporary
6  moratorium on the development, establishment, and operation of
7  Plaintiff's business and other similar businesses.  Pl.'s RJN ISO
8  TRO Ex. B ("Feb. 19 Memo.").

9      On the same day, Mr. Doyle wrote an extensive letter to the
10 Mayor and City Council of Hayward, explaining in detail his
11 opposition to the urgency ordinance and moratorium, and asking in
12 the alternative that the matter be continued for forty-five days so
13 that it could be reviewed in greater detail.  <u>Id.</u> Ex. C ("Doyle
14 Ltr.").  The letter thoroughly explained Plaintiff's opposition to
15 Defendant's planned urgency ordinance and requested that Defendant
16 consider several points: (1) not all sweepstakes are illegal in
17 California; (2) Plaintiff's Sweepstakes Promotion conforms with
18 California law; (3) Sweepstakes Promotion operators whose
19 businesses are nuisances can be eradicated without eliminating jobs
20 and revenue from legitimate operators; (4) there is no legal
21 justification for imposing a moratorium that would deprive
22 Plaintiff of the opportunity to conduct its business; (5) the
23 planned ordinance is unnecessary to preserve the community's
24 health, safety, and welfare (or to avoid a current and immediate
25 threat to the same); and (6) if the City Attorney believes that
26 sufficient evidence exists to declare Plaintiff's business a
27 nuisance, that evidence should be tested in a court instead of in
28 the City Council.  <u>Id.</u> at 3-5.

United States District Court
For the Northern District of California

1   The City adopted Ordinance No. 13-03 on February 20, 2013,
2   pursuant to California Government Code section 65858.  Pl.'s RJN
3   ISO TRO Ex. D.  Broadly, that ordinance prohibited both all future
4   issuance or approval of any permits or licenses for "Computer
5   Gaming and Internet Access Businesses" -- Net Connection Hayward is
6   such a business -- and all operation of such businesses.  Id. at 4.
7       On March 7, 2013, Defendant sent Plaintiff another cease-and-
8   desist letter.  ECF No. 10 ("Vigilia Decl.") Ex. C ("Mar. 7 Ltr.").
9   The contents of that letter were similar to the February 8 Letter,
10  but instead of asking Plaintiff to cease and desist subject to
11  California gambling laws, the letter demanded that Plaintiff comply
12  with Ordinance No. 13-03.  See id. at 1-3.  The March 7 Letter
13  invited Plaintiff to contact the City Attorney to discuss the
14  matter, but the City Attorney apparently never responded to
15  Plaintiff's requests for a conversation about Ordinance No. 13-03.
16  See Doyle Decl. ISO TRO ¶ 18.  On March 11, 2013, Plaintiff closed
17  Net Connection Hayward for fear of prosecution or other legal
18  action.  Id. ¶ 20.
19      Plaintiff sued Defendant on March 19, 2013, asserting five
20  causes of action based on the facts described above: (1) denial of
21  procedural due process, (2) denial of substantive due process, (3)
22  violation of the right to equal protection, (4) declaratory relief,
23  and (5) writ of mandate.  Compl. ¶¶ 24-55.  Plaintiff moved for a
24  TRO on March 21, 2013, and Defendant opposed the motion on March
25  25, 2013, one day before the hearing.  In the meantime, on March
26  22, 2013, Defendant noticed a public hearing on its forthcoming
27  decision to extend Ordinance No. 13-03.  ECF No. 42 ("Def.'s Supp.
28  RJN") Ex. C ("Mar. 22 Hr'g Notice").

**United States District Court**
For the Northern District of California

At the hearing on Plaintiff's motion for a TRO, Plaintiff gave a brief overview of the Sweepstakes Promotion and the procedure by which it obtained a business license, as described above.  See generally ECF No. 19 ("TRO Hr'g Tr.").  Defendant responded that its police powers are very broad and that Plaintiff showed no evidence that Defendant acted arbitrarily or unreasonably.  See id. at 31-35.  Defendant added that Plaintiff's business was not permissible under Defendant's zoning ordinances, that Plaintiff obtained its business license improperly (meaning that Plaintiff had no vested interest in it or the operation of its business), and that the Sweepstakes Promotion is illegal under California law.  Id. at 36-41.

Based on the evidence then before it, the Court granted Plaintiff's TRO to maintain the status quo while the parties prepared to present evidence at the preliminary injunction hearing.  Id. at 45.  After Plaintiff's TRO issued, the parties agreed that the TRO would remain in full force and effect, regardless of Federal Rule of Civil Procedure 65's deadlines, until the Court's decision on the preliminary injunction.  ECF No. 17 ("Apr. 4 Stip.").  Plaintiff's business therefore reopened.

On April 2, 2013, the City's Director of Development Services and the City Attorney recommended that the City Council extend the moratorium it had established in Ordinance No. 13-03.  Def.'s Supp. RJN Ex. B ("Apr. 2 Memo.").  That Memorandum described the background of Ordinance No. 13-03, suggested that Plaintiff's and other similar businesses' licenses had been granted without approval of those businesses' sweepstakes, and explained Defendant's concerns about these new businesses in terms of other

**United States District Court**
For the Northern District of California

cities' experiences and the potential negative effects of such businesses.  See id. at 1-7.  The City Council met to consider extending Ordinance No. 13-03 on April 2, and it did so unanimously, enacting Ordinance No. 13-05 pursuant to California Government Code Section 65868.  Def.'s Supp. RJN Ex. A ("Ordinance No. 13-05").[4]

Ordinance No. 13-05 included findings -- more detailed than what is summarized here -- that its purpose was to promote the public health, safety, and general welfare; that Computer Gaming and Internet Access Businesses presented new challenges for the City, as evidenced by other cities' experiences with similar businesses; that the City's present Zoning Ordinance Municipal Code were unsuited for handling these new business developments.  Id. at 1-5.  Ordinance No. 13-05 imposed the same moratorium as Ordinance No. 13-03 and also formally declared Computer Gaming and Internet Access Businesses to be nuisances.

The facts described above represent the current status of the parties and the relevant municipal legislation.

**III.   LEGAL STANDARD**

A plaintiff seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm absent preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest.  Winter v. Natural Resources

---

[4] The parties often refer to the two Ordinances, Nos. 13-03 and 13-05, collectively.  The Court occasionally does the same, though the operative Ordinance here is Ordinance No. 13-05, and the Court cites that Ordinance specifically when it is important to do so.

1  *Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

2  The Ninth Circuit has formulated a version of the preliminary

3  injunction test in which "serious questions going to the merits"

4  and a balance of hardships tipping toward the plaintiff can support

5  the issuance of a preliminary injunction, so long as there is a

6  likelihood of irreparable injury and the injunction is in the

7  public interest (that is, so long as the plaintiff makes a showing

8  on all four prongs of the <u>Winter</u> test).  <u>See</u> <u>Alliance for the Wild</u>

9  <u>Rockies v. Cottrell</u>, 632 F.3d 1127, 1131-33 (9th Cir. 2011).  In

10  other words, under this formulation, a stronger showing under one

11  factor could offset a weaker showing for another, but a plaintiff

12  must still satisfy every <u>Winter</u> factor.  <u>Id.</u> at 1135.

13

14  **IV.**  **DISCUSSION**

15  Plaintiff argues that Defendant's enactment of the Ordinances,

16  declaration of Plaintiff's business as a nuisance, and legal

17  threats to shut down Plaintiff's business deprived Plaintiff of its

18  due process and equal protection rights under the Fourteenth

19  Amendment.  <u>See</u> Br. ISO PI at 1-2.  These claims are also the basis

20  for Plaintiff's requests for declaratory relief and a writ of

21  mandate.  <u>See</u> Compl. ¶¶ 48-55.  Plaintiff claims that it is

22  entitled to relief regardless of the underlying legality of the

23  Sweepstakes Promotion.  <u>Id.</u>  Defendant argues that it acted

24  properly at every step of the ordinance, nuisance declaration, and

25  enforcement processes.  <u>See</u> Opp'n to PI at 1-2.

26  **A.**  **Due Process**

27  The parties' disputes over Plaintiff's due process claims

28  concern essentially: (a) the Ordinances' legality generally; (b)

United States District Court
For the Northern District of California

1  whether Plaintiff had obtained a vested right prior to the

2  Ordinances' enactment, and how Defendant might impair that right;

3  and (b) Defendant's nuisance powers.

**a.    The Ordinances**

5      Defendant enacted Ordinance No. 13-03 as an interim urgency

6  ordinance under California Government Code section 65868.  Opp'n

7  RJN Ex. B.  The purpose of Section 65858 "is to allow a local

8  legislative body to adopt interim urgency zoning ordinances

9  prohibiting land uses that may conflict with a contemplated general

10 plan amendment or another land use measure proposal which the

11 legislative body is studying or intends to study within a

12 reasonable period of time."  216 Sutter Bay Assocs. v. Cnty. of

13 Sutter, 58 Cal. App. 4th 860, 869 (Cal. Ct. App. 1997).  The

14 effects of an interim urgency ordinance under Section 65858 are

15 limited to forty-five days from the date of adoption, but after

16 notice and a public hearing, the legislative body can extend the

17 ordinance.  Cal. Gov't Code § 65858(a)-(b).

18     Interim urgency ordinances must include legislative findings

19 constituting urgency, and when those facts may reasonably be held

20 to constitute an urgency, courts generally do not interfere with or

21 determine the truth of those facts.  216 Sutter Bay, 58 Cal. App.

22 4th at 868.  Ordinances are presumptively valid, and given the

23 breadth of cities' police powers, courts will neither substitute

24 their judgment for those of the legislature nor hold that a

25 legislative body's enactments were improper uses of the legislative

26 body's police powers "unless [the enactments] are palpably

27 unreasonable, arbitrary or capricious, having no tendency to

28 promote the public welfare, safety, morals, or general welfare."

United States District Court
For the Northern District of California

14

1   <u>Thain v. City of Palo Alto</u>, 207 Cal. App. 2d 173, 187 (Cal. Ct.

2   App. 1962).

3        In this case, there are two especially relevant sections of

4   Ordinance No. 13-05, the operative Ordinance at this point: the

5   part that declares Plaintiff's business a nuisance, and the part

6   that prohibits Plaintiff from operating its business.  First,

7   Ordinance No. 13-05 defines "Computer Gaming and Internet Access

8   Businesses" as follows:

9               . . . [A]n establishment that provides one
10          or more computers or other electronic
            devices for access to the World Wide Web,
11          Internet, e-mail, video games or computer
            software programs that operate alone or
12          networked (via LAN, WAN, wireless access or
            otherwise) or that function as a
13          client/server program, and which seeks
            compensation or reimbursement, in any form,
14          from users.  "Computer Gaming and Internet
            Access Business" shall also be synonymous
15          with a personal computer ("PC") café,
            Internet café, cyber café, sweepstakes
16          gaming facilities, business center, Internet
            sales business and Internet center with
17          Internet sweepstakes-type games . . . .

18   Ordinance No. 13-05 at 5.

19        The moratorium's scope, as to Computer Gaming and Internet

20   Access Businesses, is this:

21              . . . [F]rom and after the effective date of
            this Ordinance, no permit or any other
22          applicable license or entitlement for use,
            including but not limited to, the issuance
23          of a business license, business permit,
            building permit, use permit or zoning text
24          amendment shall be approved or issued for
            the establishment or operation of Computer
25          Gaming and Internet Access Businesses in the
            City of Hayward.  Additionally, Computer
26          Gaming and Internet Access Businesses are
            hereby expressly prohibited in all areas and
27          zoning districts in the City.

28

*Id.*

Ordinance No. 13-05 also declares Computer Gaming and Internet Access Businesses to be nuisances:

> The establishment, maintenance or operation of a Computer Gaming and Internet Access Business as defined herein with[in] the City limits of the City of Hayward is a public nuisance. Violations of this Ordinance may be enforced by any applicable law, including but not limited to injunctions, administrative citations or criminal penalties.

*Id.* at 6.

Plaintiff has never disputed Defendant's ability to enact the Ordinances. *See* Reply ISO PI at 1. Plaintiff's argument is that the Ordinances themselves operate unconstitutionally to deprive Plaintiff of due process and subject it to unequal treatment under the law because its business is both legal and permissible under the City's zoning regulations. Plaintiff's claims primarily attack Defendant's ability to use the Ordinances to prohibit Plaintiff's operation of its business after Defendant's ostensible approval of the business. *Id.*

When a dispute over an ordinance is not whether it was validly enacted but that it has been unconstitutionally applied, an ordinance's broad scope is limited if it divests a plaintiff of vested rights previously acquired, unless the prohibited business is a nuisance. *See* Jones v. City of Los Angeles, 211 Cal. 304, 311-13 (Cal. 1930) ("[W]here . . . a retroactive ordinance causes substantial injury and the prohibited business is not a nuisance, the ordinance is to that extent an unreasonable and unjustifiable exercise of police power."); Igna v. City of Baldwin Park, 9 Cal.

**United States District Court**
For the Northern District of California

1   App. 3d 909, 913-14 (Cal. Ct. App. 1970); <u>McCaslin v. City of</u>

2   <u>Monterey Park</u>, 163 Cal. App. 2d 339, 346-47 (Cal. Ct. App. 1958);

3   <u>see also, e.g.</u>, <u>Santa Barbara Patients' Collective Health Coop. v.</u>

4   <u>City of Santa Barbara</u>, No. CV 10-06534 DDP, 2012 WL 5964353, at *5

5   (C.D. Cal. Nov. 29, 2012) (citing <u>McCaslin</u>, 163 Cal. App. 2d at

6   346-47)).  This principle limits cities' abilities to close

7   lawfully operating businesses by enacting new ordinances, because

8   cities generally want to avoid questions as to the

9   constitutionality of new ordinances' application to existing uses.

10  <u>Hansen Bros. Enters., Inc. v. Bd. of Supervisors</u>, 12 Cal. 4th 533,

11  550 (Cal. 1996); <u>Bauer v. City of San Diego</u>, 75 Cal. App. 4th 1281,

12  1291 (Cal. Ct. App. 1999).  The same concern animates Plaintiff's

13  claims.

14      Courts interpret municipal ordinances in the same manner and

15  pursuant to the same rules applicable to the interpretation of

16  statutes.  <u>See</u> <u>City of Monterey v. Carrnshimba</u>, 215 Cal. App. 4th

17  1068, 1087 (Cal. Ct. App. 2013).  Such interpretation is a judicial

18  function.  <u>Id.</u>  The Court finds it clear, based on the language of

19  the Ordinance, that the Ordinance prohibits the operation of

20  Plaintiff's business.  Ordinance No. 13-05 at 5.  That much does

21  not appear to be at issue.  The remaining issues are therefore

22  whether Plaintiff obtained a vested interest in the operation of

23  its business, and if so, whether Defendant could lawfully impair

24  that interest.

25                  **b.   <u>Vested Rights</u>**

26      The doctrine of vested rights states that a property owner who

27  has performed substantial work and incurred substantial

28  liabilities, in good faith reliance on a government permit, has a

United States District Court
For the Northern District of California

1    vested right to use the premises as the permit allows.  Communities

2    for a Better Env't v. S. Coast Air Quality Dist., 48 Cal. 4th 310,

3    323 (Cal. 2010).  While "[i]t is well settled in California that

4    public entities may impair vested rights where necessary to protect

5    the health and safety of the public," impairment of a vested right

6    without due process is a constitutional violation, unless the use

7    is a public nuisance.  Davidson v. County of San Diego, 49 Cal.

8    App. 4th 639, 648-49 (Cal. Ct. App. 1996); see also McCaslin, 163

9    Cal. App. 2d at 346-47.

10       Plaintiff argues that it obtained a vested right to operate

11   its business when it obtained a business license (coupled with a

12   discretionary approval from a land use perspective) from Defendant.

13   See Br. ISO PI at 3.  Defendant responds that mere issuance of a

14   business license does not confer a right to do business in Hayward,

15   and in any event, any vested rights in this case would be limited

16   to computer time rental and ancillary business services -- not

17   operation of a sweepstakes.  Opp'n to PI at 11-13.  Defendant adds

18   that it can lawfully impair a vested right to protect public health

19   and safety or to abate a nuisance.  Id. at 14-15 (citing Jones, 211

20   Cal. at 317; Davidson, 49 Cal. App. 4th at 648-49).  There is no

21   dispute that Plaintiff spent time and money setting up Net

22   Connection Hayward.

23       Defendant relies mainly on City of Corona v. Naulls, 166 Cal.

24   App. 4th 418 (Cal. Ct. App. 2008), in which the operator of a

25   medical marijuana dispensary had obtained a license to do business

26   in the City of Corona but was found not to have a vested right to

27   do business in the City.  Id. at 427.  However, the critical fact

28   in the trial court's decision in Naulls (and the appellate court's

affirmation of it) was that the dispensary operator never told the City of Corona that he was going to operate a medical marijuana facility. <u>Id.</u> at 427-28.  His application stated that he would operate a "miscellaneous retail" facility, explained nothing further -- he obtained his license essentially under false pretenses.  <u>Id.</u>  In this case, Mr. Doyle appears to have made every effort to be transparent with the City.  He sent emails describing his business, he invited Mr. Patenaude to look around his other businesses, and he made no attempt to hide that he would operate a cash-prize sweepstakes (even though he did not fully explain that sweepstakes's architecture).  <u>See, e.g.</u>, Tr. at 14-15, 17; Patenaude Letter.  Indeed, Mr. Patenaude visited Mr. Doyle's other businesses and was given the opportunity to play the sweepstakes games and investigate further, though he apparently did not choose to go very deeply.  <u>See, e.g.</u>, Tr. at 223-25, 228-29, 232-35.

Defendant's failure to investigate the matter and make a different finding at the time Plaintiff originally applied for its license is not Mr. Doyle's fault.  Both parties did what they were supposed to do.  Defendant contends that the sweepstakes were not one of the ancillary business services Plaintiff planned to offer, therefore limiting Plaintiff's license to "rental of computer/Internet time, provision of facsimile and copy services, and incidental sales of prepackaged snack foods," Opp'n to PI at 13, but the Court finds otherwise.  Again, Plaintiff made clear the nature of its business to Defendant.  Mr. Doyle did what he could to get Defendant to examine his sweepstakes program, but Defendant was apparently not inclined to do so.

The Court finds that Plaintiff obtained a vested right to

1   operate its business when Defendant approved its business license

2   from a land use perspective.  Even though Hayward's Municipal Code

3   prohibits the operation of business without a license and makes the

4   operation of certain business contingent on Defendant's approval,

5   Defendant's agent Mr. Patenaude approved Plaintiff's business from

6   a land use perspective, indicating that Plaintiff had satisfied

7   requirements -- what more was Plaintiff expected to do?  See Pl.'s

8   Br. ISO PI at 3, 7-10; Pl.'s RJN ISO TRO Exs. E ("Municipal Code

9   Sections 1-3.00 - 1-3.07"), F ("Municipal Code Sections 4-1.00 - 4-

10  1.67").  Defendant's argument that the license was only for tax

11  purposes, and that Plaintiff had no right to operate its business

12  absent compliance with law and Defendant's approval, must fail.

13  See Opp'n at 11-12.  Defendant approved the license from a land use

14  perspective, which in Plaintiff's and the Court's view appears to

15  be a sign-off on Plaintiff's business's legality.

16      Since the Court has found that Plaintiff had a vested interest

17  in the operation of its business after Defendant approved the

18  license, the Court must consider the exception to the due process

19  rule from Jones -- whether Defendant impaired Plaintiff's vested

20  interest in response to a nuisance.  Jones, 211 Cal. at 317; see

21  also Davidson, 49 Cal. App. 4th at 648-49; McCaslin, 163 Cal. App.

22  2d at 346-47.

23          c.   **Nuisances**

24      Defendant argues that it lawfully declared Plaintiff's

25  business, and specifically its sweepstakes operation, to be a

26  public nuisance.  Opp'n to PI at 7-8.  It adds that regardless of

27  whether Plaintiff has a vested right in its business, Defendant can

28  impair that right to protect public health and safety or to respond

**United States District Court**
For the Northern District of California

1   to a nuisance. Id. at 14-15. Plaintiff responds that Defendant

2   acted arbitrarily and irrationally both in enacting the Ordinance

3   and declaring Plaintiff's business a nuisance, and that Plaintiff

4   was entitled to a judicial determination of the nuisance

5   declaration's validity before Defendant could take action based on

6   a nuisance per se. See Reply ISO PI at 1-4, 6-8. Plaintiff also

7   states that Defendant cannot argue that Plaintiff's business is a

8   nuisance per se, since Defendant approved Plaintiff's business from

9   a land use perspective, and that Defendant failed to demonstrate

10  that Plaintiff's business is illegal under the Penal Code. Id. at

11  8-14.

12      In this dispute, the Court finds for Defendant. Cities have a

13  statutory power to declare activities or conduct to be nuisances

14  per se. Cal. Gov't Code § 38771; see also CEEED v. Cal. Coastal

15  Zone Conservation Comm'n, 43 Cal. App. 3d 315, 319 (Cal. Ct. App.

16  1974). Whenever a city has declared something to be a nuisance per

17  se, courts do not look to the common law of nuisance or to state

18  statutes to determine whether a nuisance exists, nor do courts

19  substitute their judgment for the legislature's in examining the

20  danger caused by a nuisance per se -- the only question is whether

21  a statutory violation exists and whether the statute is

22  constitutionally valid. See City of Bakersfield v. Miller, 64 Cal.

23  2d 93, 100 (Cal. 1966) (en banc); People ex rel Dep't of Transp. v.

24  Outdoor Media Grp., 13 Cal. App. 4th 1067, 1076-77 (Cal. Ct. App.

25  1993).

26      Neither notice nor a hearing is required when a city declares

27  something a nuisance per se, but both are required when government

28  acts to terminate an existing land use activity. CEEED, 43 Cal.

**United States District Court**
For the Northern District of California

App. 3d at 319.  There are two broad limits on a city's ability to declare something a nuisance.  First, per constitutional due process, cities may not act arbitrarily or unreasonably in declaring nuisances per se.  People ex rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1107 (Cal. 1997).  Second, activities or conduct that are expressly permitted under statute cannot be deemed nuisances.  Cal. Civ. Code § 3482.

Only the first limit is at issue here.  The Court finds that Defendant did not act arbitrarily or unreasonably in enacting the Ordinances and declaring Plaintiff's business a nuisance.  The Court owes deference to Defendant's choices on this matter, Thain, 207 Cal. App. 2d at 186-87, and Defendant made findings as to the necessity of its decision that the Court will neither over-analyze nor second-guess.  See Ordinance No. 13-05 at 1-5.  Defendant studied the issue, enacted a moratorium on a particular land use, then gave notice and held a hearing for that moratorium's extension and the declaration of a nuisance.  See Feb. 19 Memo.; Apr. 2 Memo.; Ordinance No. 13-03; Ordinance No. 13-05; Mar. 22 Hr'g Notice.

Plaintiff argues that Defendant lacked a rational basis to make these decisions because its evidence concerned activity outside Hayward and Defendant (in Plaintiff's estimation) did not prove that Plaintiff's sweepstakes promotion is illegal.  Reply ISO PI at 6-8; see also, e.g., Ordinance No. 13-05 at 1-5 (discussing evidence that other cities have had problems with businesses like Plaintiff's).  As to the first point, Plaintiff is correct that none of Defendant's evidence in support of either its Ordinances or nuisance determination concerns facts specific to Plaintiff's

1    business, and that Plaintiff has not had any typical nuisance

2    problems like drug activity or prostitution.  See Br. ISO PI at 9-

3    12.  But deep inquiries into the evidence are unnecessary: in the

4    due process context, the Court's job is to evaluate whether the

5    object of the ordinance is proper, and if so, whether the ordinance

6    bears a reasonable and substantial relation to its object.  See

7    Thain, 207 Cal. App. 2d at 186.  In this case, no law suggests that

8    Defendant needed to wait for the same negative effects it observed

9    in other municipalities to arise in its own downtown before it

10   could respond to a new land use development.  This is not arbitrary

11   or unreasonable action.  The Court finds that Defendant's object in

12   enacting the Ordinance was proper and that Defendant showed

13   rational grounds for its enactment.

14       At several points, Plaintiff asserts that, nuisance

15   declaration aside, it deserved a judicial determination before

16   Defendant could actually take action against the alleged nuisance

17   of Plaintiff's business.  See Br. ISO PI at 4-5; Reply ISO PI at 2-

18   3; Br. ISO TRO at 21-22.  This is not true.  A city can declare a

19   nuisance on its own, even though abatement requires additional

20   process (such as notice, hearing, and potentially judicial review).

21   See CEEED, 43 Cal. App. 3d at 319.  The parties never got that far,

22   because Plaintiff sued Defendant before the abatement process got

23   underway, and so the facts before the Court concern only

24   Defendant's process up to that point.

25       Plaintiff's strongest argument that it was entitled to due

26   process in the form of a judicial determination of the nuisance

27   declaration's validity comes from Leppo v. City of Petaluma, 20

28   Cal. App. 3d 711 (Cal. Ct. App. 1971), in which the California

**United States District Court**
For the Northern District of California

1   Court of Appeal stated that under neither common law nor its

2   statutory power to declare and abate public nuisances could a city,

3   by mere declaration, make a property a nuisance "when in fact it is

4   not." Id. at 718; see also Flahive v. City of Dana Point, 72 Cal.

5   App. 4th 241, 244 n.4 (Cal. Ct. App. 1999) (citing Leppo, 20 Cal.

6   App. 3d at 718). According to Plaintiff, Leppo requires Defendant

7   to establish by a preponderance of the evidence that an emergency

8   existed before it declared something to be a nuisance. See Reply

9   ISO PI at 1-2. However, Plaintiff's contention blurs the legal

10  distinction between the process required when a city declares

11  something to be a nuisance and when a city acts to abate a

12  nuisance. See CEEED, 43 Cal. App. 3d at 319. When a city declares

13  something to be a nuisance, its powers are broad indeed, as

14  described above. In this context, the Leppo and Flahive courts'

15  concern that a city could declare something a nuisance "when it in

16  fact is not" is a narrower statement than it seems, as the Court of

17  Appeal recently clarified in Golden Gate Water Ski Club v. Cnty. of

18  Contra Costa, 165 Cal. App. 4th 249, 256 (Cal. Ct. App. 2008).

19      In Golden Gate, the court stated that Leppo and Flahive's

20  statements that a city's "designation of a nuisance does not

21  necessarily make it so" addressed "the situation where there is

22  some factual dispute which, if determined in favor of the

23  landowner, would mean the landowner was not in fact violating

24  zoning law or land use ordinance." 165 Cal. App. 4th at 256.

25  Similarly, the defendants in City of Claremont v. Kruse, 177 Cal.

26  App. 4th 1153, 1167-68 (Cal. Ct. App. 2009), cited Leppo for their

27  argument that a city could not enforce an ordinance declaring a

28  condition that violated the city municipal code to be a public

United States District Court
For the Northern District of California

nuisance, absent a judicial determination.  The court in <u>Kruse</u> distinguished <u>Leppo</u> by noting that it concerned neither a similar ordinance nor a nuisance per se -- rather, <u>Leppo</u> concerned whether a city could dispense with a due process hearing and summarily demolish a building pursuant to its nuisance abatement powers.  <u>Id.</u>

In this case there is no factual dispute that Plaintiff's business violated the Ordinances, which are the operative land use laws in this case.  Further, as the court in <u>Kruse</u> noted, the simplicity of <u>Leppo</u> is not apposite here, since Defendant has both gone through statutorily mandatory process for its ordinance and exercised its nuisance per se powers.  Accordingly, Plaintiff's factual contentions about Defendant's nuisance declaration are misplaced: they go toward whether Defendant acted unreasonably or arbitrarily in declaring Plaintiff's business a nuisance, not whether the business is in fact a nuisance.  And since Defendant did not act unreasonably or arbitrarily, Plaintiff's challenge fails.

At this point, no further examination of Defendant's Ordinances is necessary.  It does not even matter whether Defendant was right or wrong about the sweepstakes promotion's legality, because the overriding question is whether Defendant's responses to its decision that the promotion was illegal were proper.  They were.  It is enough that Defendant acted properly in declaring Plaintiff's business a nuisance, but even in enacting the Ordinances, Defendant acted within the law.  It was permitted to pass Ordinance No. 13-03 without the usual notice and hearing, and it provided the statutorily requisite hearing for Ordinance No. 13-05.  <u>See</u> Mar. 22 Hr'g Notice; Tr. at 36 (Mr. Doyle spoke at the

1  hearing).

2            **d.**    **Conclusion as to Plaintiff's Due Process Claims**

3      As explained above, Plaintiff has shown no likelihood of

4  success on its substantive or procedural due process claims.

5  Defendant followed the proper procedures in enacting and enforcing

6  the Ordinances, and Defendant did not act arbitrarily or

7  unreasonably in doing so.

8      **B.**    **Equal Protection**

9      Plaintiff also claims that Defendant's enactment and

10 enforcement of the Ordinances violated Plaintiff's Fourteenth

11 Amendment right to equal protection under the law.  Plaintiff

12 alleges that Defendant treated Plaintiff differently than similarly

13 situated businesses, for no rational reason.  See Br. ISO PI at 23

14 (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

15 Plaintiff's claim is based on its allegation that while Hayward is

16 home to other businesses that operate sweepstakes promotions for

17 cash prizes, Defendant targeted only Plaintiff with its enforcement

18 efforts.  See id. at 23-24.  Defendant responds that Plaintiff

19 fails to show any facts indicating that it was irrationally treated

20 differently from any similarly situated business, and in any event,

21 Defendant's actions were rationally related to its legitimate

22 interest in regulating land use and putting a check on potentially

23 criminal conduct.  Opp'n to PI at 10-11.

24     When a government's action does not involve a suspect

25 classification or implicate a fundamental right, it will survive

26 constitutional scrutiny for an equal protection violation as long

27 as it bears a rational relation to a legitimate state interest.

28 New Orleans v. Dukes, 427 U.S. 297, 303-04 (1976); Lockary v.

United States District Court
For the Northern District of California

1  <u>Kayfetz</u>, 917 F.2d 1150, 1155 (9th Cir. 1990).  The rational basis

2  standard is quite deferential: it forbids the Court from judging

3  the wisdom, fairness, or logic of legislative choices, and where

4  there are "plausible reasons" for the legislature's action, the

5  Court's "inquiry is at an end."  <u>U.S. R.R. Retirement Bd. v. Fritz</u>,

6  449 U.S. 166, 174-79 (1980); <u>see also</u> <u>FCC v. Beach Commc'ns, Inc.</u>,

7  508 U.S. 307, 313-14 (1993).

8       To establish its equal protection claim in this case,

9  Plaintiff must establish that Defendant "intentionally, and without

10  rational basis, treated [Plaintiff] differently from others

11  similarly situated."  <u>Village of Willowbrook</u>, 528 U.S. at 564.

12  Plaintiff contends that according to Defendant's own arguments,

13  Defendant specifically targeted Plaintiff's Sweepstakes Promotion

14  because sweepstakes games are not permitted under any city

15  ordinance.  Reply ISO PI at 7.  However, according to Plaintiff,

16  other businesses' sweepstakes are legally identical to Plaintiff's,

17  and so if Defendant was really aiming to curtail sweepstakes for

18  zoning compliance reasons, it should have targeted those businesses

19  too.  <u>Id.</u> at 7-8.  Plaintiff's argument (partly by implication) is

20  that Defendant's enforcement actions against Plaintiff and other

21  Internet cafes must have been irrational and pretextual, given the

22  Sweepstakes Promotion's similarity to those run by better-

23  established businesses like McDonald's or Coca-Cola.  <u>See id.</u>

24       Part of Plaintiff's argument appears to urge the Court to

25  analyze the workings of Plaintiff's sweepstakes software and

26  compare it to Plaintiff's evidence on other businesses'

27  sweepstakes.  That evidence consists of an array of sweepstakes

28  rules and some brief, vague testimony on how the McDonald's

27

**United States District Court**
For the Northern District of California

1   sweepstakes might work.  <u>See</u> ECF No. 3-3 ("Griffin Decl. ISO TRO")

2   Exs. A-M (providing other sweepstakes rules); Tr. at 135-46.

3       The Court declines to consider these issues.  It is

4   unnecessary to answer questions about the sweepstakes' legality at

5   this point, and the Court will not (and cannot) issue an advisory

6   opinion on that matter.  <u>Flast v. Cohen</u>, 392 U.S. 83, 96 (1968)

7   (forbidding advisory opinions).  Besides, the Court lacks enough

8   evidence to determine whether any other businesses' sweepstakes are

9   similar, much less identical, to Plaintiff's, or even whether the

10  other businesses Plaintiff and Defendant mention (e.g., Coca-Cola,

11  Carl's Jr., or Wal-Mart) could qualify as Computer Gaming and

12  Internet Access Businesses under the Ordinances.  A list of rules

13  and Plaintiff's witness's guesses about another business's

14  sweepstakes is not enough to permit the Court to decide this issue.

15      What is clear from the evidence is that Plaintiff has failed

16  to show any likelihood of success on its equal protection claim.

17  If the Court looks to the most obviously similarly situated

18  businesses -- Internet cafes like Plaintiff -- most of those

19  businesses are already in court, on one side of the table or the

20  other.  <u>See, e.g.</u>, <u>Ibiz LLC v. City of Hayward</u>, No. CV 13-1537 SC;

21  <u>Chances Are, LLC v. City of Hayward</u>, No. CV 13-2383 SC.  There is

22  no disparate treatment (much less irrational action) there, and

23  Plaintiff does not claim that there was.  However, the Court finds

24  that even if the Court assumes that businesses as different from

25  Plaintiff as Wal-Mart, McDonald's, and Carl's Jr. are "similarly

26  situated" for purposes of equal protection law -- which they may

27  be, given the breadth of the Ordinances -- and even if all of these

28  businesses' sweepstakes operate identically, Plaintiff has not

1  established that Defendant had no rational basis for taking

2  enforcement action against Plaintiff instead of McDonald's, for

3  example.

4     The parties spar on what Defendant's actual motives were, but

5  Defendant states that its aim was to stop what it saw as both

6  forbidden activity under its land use ordinances and potentially a

7  form of illegal gambling, and also to provide a longer review

8  period for the City Council's decision about what to do with these

9  new businesses.  See Opp'n to PI at 10-11.  This is enough for

10  rational basis review.  Since it is plausible and rationally

11  related to Defendant's goals, the Court's inquiry must stop there.

12  U.S. R.R. Retirement Bd., 449 U.S. at 179.  Further, the Court does

13  not find that any evidence suggests pretext on Defendant's part.

14  Plaintiff might think that Defendant's decision was wrong, but

15  Plaintiff never established evidence suggesting that Defendant had

16  an ulterior motive in pursuing its enforcement actions against

17  Plaintiff and other similar Internet cafes.  Cf. Lockary, 917 F.2d

18  at 1155-56 (plaintiffs in equal protection action raised issue of

19  fact as to a utility board's allegedly pretextual and therefore

20  irrational decision to refuse a water hookup due to water shortage,

21  since plaintiffs' facts indicated that there was no water shortage

22  at all).

23     The Court finds that Plaintiff has not shown a likelihood of

24  success for its equal protection claim.

25     **C.    Declaratory Judgment**

26     Plaintiff requests a declaration that (1) the operation of its

27  business and its offering of a promotional sweepstakes is

28  permissible under the Hayward Zoning Ordinance, or is otherwise a

legal nonconforming use; and (2) the sweepstakes system Plaintiff
uses is legal and permissible under California law.  Compl. ¶¶ 48-
51.

The parties extensively briefed these issues as they applied
to Plaintiff's constitutional claims, but they did not brief the
underlying issues of whether declaratory judgment is proper in this
case or whether Plaintiff has showed a likelihood of succeeding on
its claim for declaratory relief.  At this point, there is no
question that the parties meet the requirements for federal
jurisdiction in this case, or that the parties have no pending
state actions between themselves.  In considering Plaintiff's
declaratory relief claim at the preliminary injunction stage, the
Court must consider whether Plaintiff's argument on this point
satisfies the <u>Winter</u> factors, as modified by the Ninth Circuit.

The Declaratory Judgment Act ("DJA") allows a district court
to "declare the rights and other legal relations of any party
seeking such declaration, whether or not further relief is or could
be sought," but only "[i]n a case of actual controversy."  28
U.S.C. § 2201(a).  Under the Declaratory Judgment Act, the Ninth
Circuit applies a two-part test to determine whether jurisdiction
over a claim for a declaratory relief is appropriate. <u>Principal
Life Ins. Co. v. Robinson</u>, 394 F.3d 665, 669 (9th Cir. 2005).  The
court must first determine if an actual case or controversy exists
within its jurisdiction.  <u>Id.</u>  If so, the court must then decide
whether to exercise its jurisdiction.  <u>Id.</u>

In determining whether to exercise jurisdiction, courts are
guided by the factors from <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S.
491 (1942).  "The <u>Brillhart</u> factors are non-exclusive and state

**United States District Court**
For the Northern District of California

that, '[1] the district court should avoid needless determination
of state law issues; [2] it should discourage litigants from filing
declaratory actions as a means of forum shopping; and [3] it should
avoid duplicative litigation.'" Principal Life Ins. Co., 394 F.3d
at 669 (quoting Dizol, 133 F.3d at 1225) (alterations in original).
Additionally, the Ninth Circuit asks district courts to consider
whether the declaratory action will be useful in clarifying the
legal relations at issue, thereby affording relief from
uncertainty, insecurity, and controversy giving rise to the
proceeding. McGraw-Edison Co. v. Preformed Line Prods. Co., 362
F.2d 339, 342 (9th Cir. 1966), cert denied 385 U.S. 919 (1966).

As to Plaintiff's first request for declaratory judgment --
that the operation of its business and its offering of a
promotional sweepstakes is permissible under the Hayward Zoning
Ordinance, or is otherwise a legal nonconforming use -- the Court
finds no likelihood of success. The Court discussed this issue
above, at length.

As to Plaintiff's second request -- to declare Plaintiff's
Sweepstakes Promotion legal under California law -- the Court finds
no likelihood of success. There is no actual controversy on that
matter, and for the Court to decide the issue now would be an
impermissible advisory opinion. Flast, 392 U.S. at 95-96.

It is true that courts may grant declaratory relief on the
constitutionality of state criminal statutes when prosecution has
been threatened but is not pending. See Steffel v. Thompson, 415
U.S. 452, 469-70 (1974). But that situation does not apply to this
case. Plaintiff's claims are based on Plaintiff's contentions that
Defendant's Ordinances were unconstitutionally enacted, but as the

1   Court has found, that is not the case here.  Plaintiff's requested

2   declaratory relief is very different: it asks the Court to decide

3   whether the California gambling laws should apply to Defendant's

4   Sweepstakes Promotion, even though as noted above, and as Plaintiff

5   agrees, the legality of the Sweepstakes Promotion is not relevant

6   to Plaintiff's constitutional claims.  Br. ISO PI at 2 ("While the

7   legality of [Plaintiff's] sweepstakes is a disputed issue, the

8   resolution of this motion [for a preliminary injunction] does not

9   depend on the outcome of that issue.")  As such, if the Court were

10  to issue a ruling on whether Plaintiff's sweepstakes system is

11  legal and permissible under California law, the Court would

12  essentially be issuing an advisory opinion on a state statute even

13  though the statute's constitutionality has not been challenged, and

14  the statute itself is not relevant to Plaintiff's other

15  constitutional claims.  <u>Flast</u>, 392 U.S. at 95 (discussing rule

16  against advisory opinions).

17       Therefore none of the factors from <u>Brillhart</u>, <u>Dizon</u>, or

18  <u>McGraw-Hill</u> favor the exercise of jurisdiction under the DJA or

19  indicate that Plaintiff has shown a likelihood of success for its

20  declaratory relief claims regarding the legality of the

21  sweepstakes.  In short, resolution of this particular declaratory

22  relief matter would resolve no actual controversies, settle no

23  rights at issue in this case, and would result in the Court's

24  making an unnecessary decision on state law.

25       Accordingly, the Court finds that Plaintiff has not shown a

26  likelihood of success for its declaratory judgment claim under

27  <u>Winter</u>.

28  ///

32

**United States District Court**
For the Northern District of California

1       **D.**   **Writ of Mandate**

2       Plaintiff requests a writ of mandate invalidating the

3   Emergency Ordinance as applied to Net Connection and directing

4   Defendant to cease all enforcement efforts against Net Connection

5   pursuant to the Emergency Ordinance.  Compl. ¶¶ 52-55.  As stated

6   above, Plaintiff has not shown sufficient likelihood of success on

7   the merits to warrant the Court's issuing a writ of mandate.  This

8   claim will not suffice to show the necessity of a preliminary

9   injunction under Winter.

10       **E.**   **Conclusion on Plaintiff's Preliminary Injunction**

11       Under both Winter alone and the Ninth Circuit's formulation of

12   the sliding scale test, Plaintiff has not shown that a preliminary

13   injunction should issue.  Winter, 555 U.S. 7, 20 (2008); Cottrell,

14   632 F.3d at 1131-33.  Plaintiff has failed to show a likelihood of

15   success on the merits on any of its claims, and without a showing

16   under every Winter factor, Plaintiff cannot obtain a preliminary

17   injunction.  See Cottrell, 632 F.3d at 1131-33.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

United States District Court
For the Northern District of California

**V.    CONCLUSION**

For the reasons described above, Plaintiff Net Connection Hayward LLC's motion for a preliminary injunction is DENIED.  The Court wishes to make clear that Plaintiff's motion is denied because it was directed only to issues of due process, equal protection, declaratory relief, and mandate, as discussed above. However, the plaintiff in the related case of IBiz, LLC v. City of Hayward, Case No. 13-1537, succeeded on a First Amendment challenge -- which Plaintiff did not make in this case -- and was granted a preliminary injunction against the ordinance that was at issue here.  Defendant City of Hayward remains subject to that injunction, even though Plaintiff's motion is denied.


IT IS SO ORDERED.


Dated: July 18, 2013

UNITED STATES DISTRICT JUDGE